The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Taylor and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties have been bound by and subject to the North Carolina Workers' Compensation Act at all times relevant to this claim.
2. The plaintiff and defendant-employer maintained a relationship of employer and employee for over two years.
3. On June 15, 1995 and at all relevant times, ITT Hartford was the carrier on the risk.
4. The plaintiff-employee suffered a compensable injury by accident on June 15, 1995.
5. The parties, through counsel, stipulated into evidence a Form 22 as attached to the Pre-Trial Agreement from which the plaintiff's average weekly wage shall be determined.
* * * * * * * * * * *
RULINGS ON EVIDENTIARY MATTERS
All objections raised during the depositions of Dr. Lechner and Dr. Martin are ruled upon in accordance with the law and Opinion and Award rendered in this matter.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff was born October 18, 1955. Plaintiff was employed by defendant-employer, Blalock Manufacturing/Leucadia National Corporation in 1993, held various jobs for that company thereafter, and was so employed on June 15, 1995.
2. Since beginning work for the defendant-employer in 1993, plaintiff has performed various jobs. Plaintiff first worked approximately six weeks as a conveyor belt stacker, with two people stacking approximately two thousand pieces per hour. She next operated a Lesnick/Pam machine handling approximately five hundred doors per day with each door being in four pieces. In this particular job the plaintiff would put the corners of the wood together and staple them to produce doors. Plaintiff was on this job for approximately four or five months. As an additional part of her duties while working on the Lesnick/Pam machine, the plaintiff was required to "bust up doors" where she was required to hit the doors on the floor, hitting the corner of the base of her thumb repetitively to break them up. On both of these jobs, plaintiff worked approximately ten hours per day, four days a week with eight hours per day on Friday and Saturday. Following her duties on the Lesnick/Pam machine, plaintiff operated a chop saw for approximately one year. In that job the plaintiff would grasp wood, pull it onto rollers from left to right and with a foot pedal chop the wood, pick it up and throw it onto a conveyor. The production requirements for this job were approximately two thousand pieces per day. Plaintiff next went to work on a Miter saw for approximately nine to ten months. This job required similar activity to the chop saw job except that the wood was not quite as heavy. In 1995, the plaintiff was transferred to the pre-finishing (paint-o-matic) machine which paints molding.
3. Plaintiff has an average weekly wage of $374.92.
4. Plaintiff was employed as a furniture upholster from 1973 through 1979. She had also worked as a waitress and fixed hair.
5. On June 15, 1995, while plaintiff was "tailing" the pre-finishing machine which required her to catch the molding coming out of the machine, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer when she suffered a bone bruise to her right hand. As a result of this admittably compensable injury by accident, on June 16, 1995, plaintiff sought medical attention at the Emergency Room of Mission Memorial Hospital where she saw Dr. Christopher T. Lechner, a hand-surgeon.
6. On June 16, 1995, plaintiff was suffering from a contused/bruised right hand as a result of her injury by accident on the pre-finishing machine which occurred on June 15, 1995.
7. At that time, plaintiff was also suffering from severe carpal tunnel syndrome in the right hand which involved severe atrophy of the thumb muscles and chronic medial nerve problems. The atrophy of the thumb muscles was so severe that it must have been pre-existing for at least one year.
8. On July 3, 1995, on the referral of Dr. Lechner, plaintiff underwent an EMG nerve study performed by Dr. Reid Taylor, a neurologist with Mountain Neurological Center. As a result of her severe carpal tunnel syndrome and atrophy of the thumb muscles, plaintiff underwent a right side carpal tunnel release on August 8, 1995 which was performed by Dr. Lechner.
9. Plaintiff's June 15, 1995 injury by accident which resulted in a contused hand, did not cause plaintiff's right side carpal tunnel syndrome nor did it cause the atrophy of her thumb muscles. Plaintiff's carpal tunnel surgery would have been required absent her injury by accident on June 15, 1995.
10. Plaintiff has been out of work since June 15, 1995 as a result of her carpal tunnel syndrome and the resulting corrective surgery.
11. During the time the plaintiff was out of work she began to experience symptoms in her left hand, which symptoms were a result of carpal tunnel syndrome in the left hand. On March 11, 1996, Dr. Lechner performed a carpal tunnel release on plaintiff's left hand.
12. On May 6, 1996, plaintiff reached maximum medical improvement and sustained a 35% permanent partial disability of the right hand.
13. Plaintiff had a pre-existing right carpal tunnel syndrome before her employment with defendant-employer. However, plaintiff's activities "busting up doors" exacerbated, made worse and contributed to plaintiff's right-sided carpal tunnel syndrome.
14. Plaintiff has claimed compensation for an occupational disease and has claimed that the condition of her right hand resulted from her almost constant use of her hands in her employment. Her various jobs with defendant-employer did involve use of the hands almost constantly.
15. Plaintiff developed carpal tunnel syndrome in her right hand. Although her carpal tunnel syndrome was pre-existing, her work activities "busting up doors" aggravated the symptoms. However, plaintiff has failed to demonstrate that she was at an increased risk of developing carpal tunnel syndrome by reason of her job with defendant-employer as compared to the general population not so employed. Plaintiff did not prove that her job duties placed her at an increased risk of developing the condition as compared to the general public not so employed. Consequently she did not establish an essential element of occupational disease.
16. There is insufficient evidence of record from which to determine by its greater weight that plaintiff's employment with defendant-employer placed plaintiff at an increased risk of developing carpal tunnel syndrome than members of the general public not so employed.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. In 1995, plaintiff's complaints of carpal tunnel syndrome did not result from an injury by accident arising out of and in the course of plaintiff's employment with defendant-employer. N.C.G.S. 97-2(6).
2. Plaintiff has not proven that she developed an occupational disease which was due to causes and conditions characteristic of and peculiar to her employment and which were not an ordinary disease of life to which the general public was equally exposed. N.C.G.S. 97-53(13).
3. Plaintiff is, therefore, entitled to no compensation under the provisions of the North Carolina Workers' Compensation Act.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
ORDER
1. Under the law, plaintiff's claim must be, and the same is DENIED.
2. Each side shall bear its own costs.
This the ____ day of August 1997.
 S/ ___________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ ___________________ THOMAS J. BOLCH COMMISSIONER
S/ ___________________ COY M. VANCE COMMISSIONER
DCS/bjp